ANDREW KEHN, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Where the compensation of an employe of the State is fixed by statute, it cannot be reduced by the State officer under whom he is employed.

The fact that the employe takes, for a time, the reduced compensation, does not estop him from claiming the residue.

The provision of the appropriation act of 1875 (Chap. 634, Laws of 1875), fixing "the compensation of the men employed as firemen in the capitol," had reference to the old capitol; it was not confined to firemen in service in 1875, but was prospective in its character and was in force in 1881.

Accordingly *held*, that plaintiff, who was employed as fireman in May 1880, by the superintendent of the old capitol, and who continued to serve in that capacity until about December, 1881, but who had been paid during the summer months but one-half the daily allowance fixed by said act, was entitled to the balance; and that a decision of the board of audit rejecting his claim therefor was error.

(Submitted June 15, 1883; decided October 2, 1883.)

APPEAL, under chapter 211, Laws of 1881, from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 24, 1882, which affirmed a decision of the board of audit disallowing a claim of plaintiff for a balance of his compensation as fireman of the old capitol, alleged to be due and unpaid.

The material facts are stated in the opinion.

*Edward J. Meegan* for appellant.   The act of 1875 (Chap. 634), which fixes the pay of firemen at the capitol at $3 per day, prescribed an imperative rule and definitely established their salary.   (Laws of 1880, p. 251; *Jackson* v. *Van Zandt,* 12 Johns. 176.)   The act of 1875, in its allusion to the capitol, referred to what is now known as the old capitol building. (1 R. S. [7th ed.] 581, 582; Laws of 1830, chap. 249; Laws of 1881, chap. 325; Laws of 1879, p. 214; Laws of 1880, p. 254; Laws of 1881, p. 276; Laws of 1878, p. 33.)   The salary of an officer, as fixed by statute, cannot be reduced except by law duly enacted.   The salary attaches to the position. (*People, ex rel. Satterlee,* v. *B'd of Police,* 75 N. Y. 42; *People, ex rel. Ryan,* v. *French,* 13 Rep. 599; *People, ex rel. Nugent,* v. *B'd of Police,* 27 Hun, 261; *Montague's Adm'r* v. *Massey,* 13 Rep. 700; *Goldsborough* v. *U. S.,* Taney's C. C. Dec. 80, 89; Wood's Master and Servant, p. 205.)

*Leslie W. Russell,* attorney-general, for respondent.   Appellant was entitled to receive but $1.50 per day for his work during the summer months, and his agreement with the superintendent to that effect was binding upon him.   (Laws of 1878, p. 519; Laws of 1880, p. 254; Laws of 1881, p. 276; *Sullivan* v. *Mayor,* 47 How. Pr. 493; *Phyfe* v. *Eimer,* 49 N. Y. 102; *Drew* v. *Mayor,* 8 Hun, 445.)   The board of audit properly dismissed the appellant's claim.   It has no jurisdiction to audit or pass upon claims which are not disputed. (Laws of 1881, chap. 211, § 2.)

RAPALLO, J.   The uncontroverted evidence shows that on the 1st of May, 1880, the appellant was employed by Mr.

Hyde, superintendent of the old capitol, as fireman therein, and continued to serve in that capacity from the time of his employment until the filing of his claim before the board of audit, which was in November or December, 1881.

He claims pay at the rate of $3 per day during that period by virtue of a provision in the general appropriation act of 1875, which reads as follows: "And the compensation of the men employed as firemen in the capitol is hereby fixed at $3 per day to each of them. Said salaries shall be paid upon the certificate of the keeper of the capitol."

The appellant was paid at the rate thus prescribed by law from the time of his employment up to the 24th of May, 1880, when the superintendent, claiming to act under the direction of the comptroller, refused to allow him more than $1.50 per day during the summer months, and he made this reduction for the periods from May 24, 1880, to September 30, 1880, from May 21, 1881, to June 30, 1881. The appellant received the reduced pay during these periods, but there is no evidence that he ever agreed to the reduction. From June 30, 1881, to September 30, 1881, he declined to receive the reduced pay, and has been paid nothing. The present claim is for the sums necessary to make up his full pay of $3 per day up to September 30, 1881.

The board of audit rejected the claim, and on appeal to the Supreme Court, the General Term sustained the decision on two grounds. First, that the appellant was hired and agreed to work for $1.50 per day, and was not employed as fireman. Second, that, if otherwise, the rate fixed by statute for fireman's pay might be modified and reduced by the agreement of the parties.

The first ground is we think wholly untenable under the evidence. The testimony is positive and uncontroverted that the appellant was employed as fireman, and not in any other capacity. The superintendent himself testified that he employed the appellant as one of the firemen on the 1st of May, 1880; that he did not discharge him as fireman, and did not hire him over as laborer; that fires were made during the sum-

mer months for the purpose of drying out the dampness ; that these men (appellant and another) made the fires ; that it was their duty to make them, and that they were on duty ready to make them. He does not allege that they ever agreed to a reduction in their pay, but testified that he used his own discretion as to the time when their wages should be reduced.

As to the second ground upon which the General Term place their decision, we think it comes within the decision of this court in *People, ex rel. Satterlee,* v. *Board of Police* (75 N. Y. 38), where it was held that the board of police commissioners could not reduce the amount fixed by law as the salary of a police surgeon and procure persons to act at a less sum than the statute prescribed. To the same effect is *Goldsborough* v. *U. S.* (Taney's C. C. Decisions, 80). In that case it was further held that it was immaterial whether the person whose salary is fixed by law is or is not an officer, so long as he is specified in the law fixing his salary.

The present case, however, is stronger than either of those cited. At the time the appellant entered into the service his pay was fixed by law, and there is no evidence that he ever consented to a change. It was reduced by the superintendent, and for a portion of the time the appellant took the reduced pay, but that does not estop him from claiming his full pay if he was legally entitled to it. (*Montague's Adm'r* v. *Massey,* 13 Reporter, 701.)

On the present appeal the attorney-general raises the point that the statute of 1875, fixing the rate of appellant's pay, did not apply to the firemen employed in the old capitol building in 1880 and 1881, a ground not taken by the General Term. At the time of the passage of the act of 1875, the old capitol building was the only one known as the capitol. This name was declared by law and was to continue. The trustees of the capitol have its care and custody (Laws of 1830, chap. 249), and are not to assume control of the new capitol until the first of January following the demolition of the old capitol. (Laws of 1881, chap. 325, § 4.) The provision fixing the salaries of the firemen employed in the capitol had reference to the old

Statement of case.

capitol, and had not in 1881 been repealed.    It was clearly pro-spective and not confined to the firemen in the service in 1875.

We think the appellant was entitled to a salary of $3 per day so long as he was retained as fireman and that his claim should have been allowed.

The judgments of the General Term and of the board of audit should, therefore, be reversed and judgment rendered in favor of the appellant for the amount of his claim, with costs.

All concur, except EARL, J., not voting.

Judgment accordingly.